# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | |
|---|---|
| STACY E. HUSKEY-KINKADE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:18-cv-00015-AGF |
| ) | |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Stacy Huskey-Kinkade was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, or supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's unopposed Statement of Uncontroverted Facts, which is contained in Plaintiff's brief (ECF No. 15), and Defendant's unopposed Statement of Additional Facts (ECF No. 21-2). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on September 11, 1973, was diagnosed with cervical cancer

in 2011. She was treated with chemotherapy and radiation, and she has been in remission since 2012. However, her cancer and its treatment resulted in right renal failure and left renal function of 10%. Thus, bilateral stents were placed in her kidneys beginning in May 2013, and the stents have to be replaced approximately every three months.

Plaintiff filed her applications for benefits on March 27, 2014. She alleged disability beginning March 28, 2013, due to her history of cervical cancer, learning disability, speech impediment, bipolar disorder, schizophrenia, attention deficit hyperactivity disorder, side effects from chemotherapy, stents in kidneys, incontinence, and depression. On May 19, 2014, Plaintiff's applications were denied at the initial administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on February 24, 2016, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. After the hearing, the ALJ granted Plaintiff's request for a psychological consultative examination with IQ testing. The examination took place on April 14, 2016, and the examining psychologist, David Peaco, Ph.D., completed a report dated April 19, 2016.

Dr. Peaco assessed Plaintiff to have a full scale IQ of 72, with diagnoses of Bipolar Disorder I and Borderline Intellectual Functioning. Dr. Peaco found that Plaintiff had mild limitations in understanding, remembering, and carrying out simple instructions; moderate limitations in understanding, remembering, and carrying out complex instructions, and making judgments in complex work-related decisions; moderate

2

limitations in interacting appropriately with the public, supervisors, and coworkers; and a marked limitation in responding appropriately to usual work situations and to changes in a routine work setting. Tr. 720-28.

By letter dated May 2, 2016, the ALJ proffered Dr. Peaco's report to Plaintiff through her attorney. In this letter, the ALJ also advised Plaintiff of her right to submit a written statement or comments concerning the new evidence, to submit written questions to be sent to Dr. Peaco, and to request a supplemental hearing, at which Plaintiff would have the opportunity to appear, testify, produce witnesses, and submit additional evidence. With respect to the supplemental hearing, the ALJ stated:

> If you request a supplemental hearing, I will grant the request unless I receive additional records that support a fully favorable decision. In addition, you may request an opportunity to question witnesses, including the author(s) of the new evidence. I will grant a request to question a witness if I determine that questioning the witness is needed to inquire fully into the issues. If an individual declines a request by me to appear voluntarily for questioning, I will consider whether to issue a subpoena to require his or her appearance.
>
> You may request that I issue a subpoena to require the attendance of witnesses or the submission of records. You must submit a subpoena request, in writing, no later than 5 days before the date of any supplemental hearing. Any request that I issue a subpoena must provide the names of the witnesses or documents to be provided; the address or location of the witnesses or documents with sufficient detail to find them; a statement of the important facts that the witness or document is expected to prove; and the reason why these facts cannot be proven without issuing the subpoena. I will issue a subpoena if reasonably necessary for the full presentation of the case.

Tr. 208.

The ALJ and Plaintiff's counsel thereafter exchanged several letters regarding Plaintiff's rights with respect to Dr. Peaco's report. In these letters, Plaintiff's counsel

repeatedly stated that Dr. Peaco's opinion supported a fully favorable decision, but that in the absence of a fully favorable decision, Plaintiff wished to request a supplemental hearing at which Plaintiff wished to cross-examine Dr. Peaco.  Counsel stated that interrogatories would not suffice, that the "only reason" for a supplemental hearing was to cross-examine Dr. Peaco, and that there would be "no point" in having a supplemental hearing if Dr. Peaco were not made available for cross-examination.  *E.g.*, Tr. 352, 358.

In response, the ALJ scheduled a supplemental hearing for August 30, 2016, but the ALJ informed counsel that Dr. Peaco would not be compelled to appear at such hearing. The ALJ then asked counsel to provide authority for his position that a consultative examiner must be made available for questioning at a supplemental hearing and to explain why cross-examination of Dr. Peaco was required for a full presentation of the case, or, in the alternative, to make a proper request that complied with the Commissioner's regulations for a subpoena to be issued to Dr. Peaco.

Counsel replied to the ALJ's letters by reiterating his belief that he had the right to cross-examine Dr. Peaco.  In support of this position, counsel cited the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX").[1]  As to the ALJ's questions regarding the need to cross-examine Dr. Peaco, counsel stated that he could "do no more than quote Wigmore [on Evidence]" regarding the function and necessity of cross-examination generally in the American system of evidence.  Tr. 358.

---

[1]    HALLEX provides procedural guidance for processing and adjudicating claims at the hearing and Appeals Council levels.

By letter dated August 5, 2016, counsel reiterated that the "sole purpose" of Plaintiff's supplemental hearing request was to cross-examine Dr. Peaco, and that in light of the ALJ's refusal to permit such cross-examination, Plaintiff had "nothing further to offer at a supplemental." Tr. 364. Counsel followed up with an additional letter dated August 22, 2016, at which he maintained that Dr. Peaco's report supported a fully favorable decision. Tr. 365. Pursuant to these letters, the ALJ canceled the supplemental hearing scheduled for August 30, 2016.

The ALJ thereafter submitted written interrogatories to another VE, and permitted Plaintiff's counsel to submit additional interrogatories to the VE and/or to request a supplemental hearing with respect to the new VE's evidence. Plaintiff's counsel chose to submit additional interrogatories to the VE, which the VE answered on January 6, 2017.

By decision dated March 22, 2017, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work" as defined in the Commissioner's regulations, except:

> [Plaintiff] is limited to work involving simple, routine tasks and simple work-related decisions. [She] is limited to low stress work, defined as work involving occasional decision making, occasional changes in work setting, and only occasional interaction with the public, coworkers, and supervisors.

Tr. 23.

In formulating this RFC, the ALJ gave only partial weight to Dr. Peaco's opinion. Specifically, the ALJ discounted Dr. Peaco's opinion that Plaintiff was markedly impaired in adjusting and coping with the world around her. The ALJ found that such an opinion

5

was inconsistent with Plaintiff's self-reported daily activities, including her independence in all activities of daily living; her ability to take care of her home by herself; her enjoyment of camping, swimming, bonfires, cookouts, and attending sporting events; and her admittedly "good" social life with friends.  Tr. 29-30.

The ALJ also considered Plaintiff's complaints regarding her post-cancer treatment and its side effects.  The ALJ found that Plaintiff's complaints of urinary incontinence and nausea were not supported by the medical records, in which there was little to no mention of these issues.  The ALJ recognized that Plaintiff had her stents replaced every three months, but the ALJ noted that the medical records described this as a "straight forward procedure" that did not take more than 45 minutes.  Although Plaintiff testified that she experienced significant pain and other side effects leading up to and immediately following the stent replacement, the ALJ noted that the medical records indicated that Plaintiff did well with the procedure, except for a single occasion where the stents malfunctioned and Plaintiff developed a urinary tract infection, which was treated with antibiotics.  The ALJ further noted that there was no indication in the record of any doctors placing Plaintiff on restrictions following a stent replacement, and that a May 2015 pre-surgery anesthesia assessment found Plaintiff to have the ability to do activities more consistent with "light work," as defined in the Commissioner's regulations (which requires more physical ability than the sedentary work to which the ALJ limited Plaintiff).  Tr. 28-29, 629-31, 745.

The ALJ next found that Plaintiff could perform certain unskilled jobs listed in the

6

Dictionary of Occupational Titles ("DOT") (final assembler, table worker, and cuff folder), which the VE had stated by post-hearing interrogatory response that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council of the Social Security Administration, which was denied on January 24, 2018. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that the ALJ denied her a full and fair hearing by denying her the right to cross-examine Dr. Peaco. Plaintiff further argues that the ALJ failed to properly consider and incorporate into the RFC Plaintiff's testimony at the evidentiary hearing regarding the side effects from her post-cancer treatments, including her complaints of pain before and after her stent replacements, which Plaintiff argues would cause her to be absent from work too frequently to sustain employment. Plaintiff asks that the ALJ's decision be reversed and that she be awarded benefits, or alternatively, that the case be remanded for further development of the record.

## **DISCUSSION**

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by

substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment

is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A special technique is used to determine the severity of mental disorders. This technique calls for rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Right to Cross-Examine Post-Hearing Consultative Examiner**

Plaintiff argues that, to satisfy due process, "an ALJ is *required* to allow a claimant to cross-examine a witness," citing the Eighth Circuit's decision in *Coffin v. Sullivan*, 895

9

F.2d 1206 (8th Cir. 1990). ECF No. 15 at 8 (emphasis in original). However, the Eighth Circuit has since held that *Coffin* does not stand for such a proposition, that any such reading of the case is dicta**,** and that, in fact, "due process does not afford social security claimants an absolute right to cross-examine individuals who submit a report." *Passmore v. Astrue*, 533 F.3d 658, 665 (8th Cir. 2008). Rather, to determine whether a disability claimant is provided a "full and fair hearing" to satisfy due process, courts must apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Courts must balance "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Eldridge*, 424 U.S. at 335.

Applying this test, the Eighth Circuit in *Passmore* discussed with approval the Sixth Circuit's decision in *Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996), which upheld an ALJ's decision to deny a claimant's request for a subpoena to cross-examine the author of a post-hearing medical report. *Passmore*, 533 F.3d at 664. The ALJ in *Flatford* agreed to submit further interrogatories to the author of the post-hearing evidence, but denied the claimant's request for cross-examination. *Flatford*, 93 F.3d at 1298-99. The Sixth Circuit held that cross-examination was not required under the *Eldridge* balancing test, noting that "[w]hile almost every claimant in every case would like to cross-examine

10

the witnesses, we do not believe that the danger of inaccurate medical information or biased opinions is sufficiently great to cause us to believe that a claimant might erroneously be denied benefits without cross-examination upon demand." *Id.* at 1306 (also noting the administrative burdens of imposing an absolute right to cross-examination).

The Eighth Circuit in *Passmore* further held that an ALJ did not abuse his discretion in denying a claimant's request to cross-examine the author of a post-hearing consultative examination report where the claimant never explained "the important facts that [the author] was expected to prove or . . . why these facts could not be proved without a subpoena and cross-examination," and "also never indicated why the information he sought could not have been obtained through interrogatories." *Passmore*, 533 F.3d at 666.

The Court likewise finds that the ALJ in this case did not abuse his discretion, or deprive Plaintiff of a full and fair hearing, by denying Plaintiff's request to cross-examine Dr. Peaco. The ALJ granted Plaintiff's request for a supplemental hearing, and he advised Plaintiff of her right to submit interrogatories to Dr. Peaco. The ALJ further offered Plaintiff, who was represented by counsel, the opportunity to explain why cross-examination was necessary and to submit a request for a subpoena that complied with the Commissioner's regulations, *see* 20 C.F.R. § 404.950(d)(2). Plaintiff failed to do either. In short, Plaintiff failed to establish that cross-examination of Dr. Passmore was reasonably necessary for the full presentation of her case.

Further, Plaintiff has not demonstrated prejudice resulting from the ALJ's denial of her request for cross-examination. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) ("[A]bsent unfairness or prejudice, we will not remand."). The ALJ did not substantially rely on Dr. Peaco's report in denying Plaintiff benefits. He accorded only partial weight to the report. In fact, as Plaintiff noted, Dr. Peaco's report supported some of Plaintiff's claims, rendering cross-examination largely unnecessary. As such, Plaintiff has not shown that the ALJ's decision would have been different had she been permitted to cross-examine Dr. Peaco. *See, e.g.*, *Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 404–05 (6th Cir. 2016) (holding that an ALJ did not abuse his discretion in failing to issue a subpoena of a consultative psychologist where the ALJ did not substantially rely on the psychologist's report in denying the claim for benefits, the report supported the claimant's claims, and the claimant's request for cross-examination was merely to ask questions that would bolster her case).

**ALJ's Credibility Assessment and Impact of Post-Cancer Treatments on the RFC**

"Credibility determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citation omitted). The Court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ' evaluation of credibility." *Id.* Here, good reasons and substantial evidence support the ALJ's determination that Plaintiff's testimony regarding the disabling side effects of her post-cancer treatments was not entirely credible.

As the ALJ noted, Plaintiff's subjective complaints of disabling pain around the

time of her stent replacements were not consistent with the medical records, which noted, for example, that less than two weeks prior to her stents being replaced in April 2014, she was observed to be in no acute distress and demonstrated only "very mild pain on palpation." Tr. 526-27. Likewise, although Plaintiff claimed that she suffered urinary incontinence before her April 2014 stent replacement, she also stated that she had not suffered from such urinary incontinence since her first stent placement in May 2013. Tr. 526. Finally, as to Plaintiff's argument that she is "limited to ten-pounds lifting for a month" following her stent replacements (ECF No. 15 at 9), the Court agrees with the Commissioner that this restriction is consistent with the ALJ's RFC limitation to sedentary work. 20 C.F.R. § 404.1567 ("Sedentary work involves lifting no more than 10 pounds at a time.").

In sum, upon review of the record, the Court concludes that the ALJ's decision is supported by substantial evidence in the record as a whole.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 27th day of February, 2019.